## A. J. ROGERS v. MEXICO CITY BANKING COMPANY.

Decided May 22, 1907.

**1.—Quantum Meruit—Pleading.**

A recovery quantum meruit may be had upon a pleading alleging the services rendered and their value though the pleading also alleges that "thereby" the defendant became liable and promised to pay the amount in several payments of $500 each; such conclusion is stated as a result of the facts already pleaded, and not as an express agreement.

**2.—Evidence—Hypothetical Question.**

Objections to hypothetical questions and the answers thereto, on the ground that many facts were assumed which no evidence tended to support, should, it seems, point out the particular facts claimed to be improperly assumed.

**3.—Same.**

An hypothetical question assuming the details of medical services rendered and asking an opinion as to the value, though not entirely accurate with respect to the facts supported by the evidence, is held sufficient in substance to warrant the admission of the opinions of the witnesses thereon.

**4.—Expert Opinion—Medical Services.**

An expert physician is qualified to give his opinion as to the value of medical services rendered by him.

Appeal from the District Court of Dallas County. Tried below before Hon. T. F. Nash.

*Finley, Knight & Harris,* for appellant.—The suit being for an

agreed sum and not upon a *quantum meruit,* it was error for the court to submit to the jury the issue of the reasonable value of the services as a basis of recovery.     Gammage v. Alexander, 14 Texas, 414; Parker v. Beavers, 19 Texas, 410; Morris v. Kasling, 79 Texas, 145; Western Union Tel. Co. v. Smith, 88 Texas, 13; Childress v. Smith, 90 Texas, 611; Stokes v. Burney, 22 S. W. Rep., 127; Riverside Lumber Co. v. Lee, 27 S. W. Rep., 161.

Where an expert witness is being examined who is not cognizant of the facts upon which his opinion is sought, the facts stated as a basis of the question propounded must exist in the evidence adduced upon the trial, and it is error for the court to admit a hypothetical question and the answer thereto where any material portion of the facts embraced in the question propounded to the witness have not been proven.     Texas & P. Ry. Co. v. DeMilley, 60 Texas, 199; Lee v. Heuman, 32 S. W. Rep., 94; Ft. W. & D. Ry. v. Thompson, 75 Texas, 504; Armendaiz v. Stillman, 67 Texas, 462; 12 Am. & Eng. Enc. of Law, 460, and authorities cited; 5 Enc. of Ev., 605, and authorities cited; 1 Wharton on Ev. Par., 452; 1 Greenleaf on Ev. Par., 441-L.

*Warner, Johnson, Galston & Wilson,* and *Morris & Crow,* for appellee.

KEY, Associate Justice.—Mexico City Banking Company brought this suit against A. J. Rogers and W. E. McIlhenny for the recovery of an alleged debt.     The plaintiff's petition contained three separate and distinct counts, each setting up a distinct and separate cause of action.     In the first count it was alleged that the defendant Rogers had executed five promissory notes for the sum of $500 each, payable to the order of A. W. Parsons, and that they had been transferred to the plaintiff.     It was alleged that the notes were signed A. J. Rogers, per W. E. McIlhenny, and that the latter was the duly authorized agent of Rogers.     In the second count it was alleged that if McIlhenny was not the agent of Rogers, and had no authority to sign his name to the notes, that McIlhenny was guilty of such fraud as rendered him liable and bound to pay the notes.     In the third count, which like the second was an alternative plea, it was alleged that if the plaintiff was not entitled to recover upon the notes, he was entitled to recover upon the following allegations:

"Plaintiff complaining of A. J. Rogers, defendant, alleges that Dr. A. W. Parsons is a physician of high standing, resident and engaged in the practice of his profession in the city of Mexico, Mexico, and duly so authorized to practice his said profession by the laws of the Republic of Mexico, and on or about the 5th day of April, 1905, at the special instance and request of the said A. J. Rogers, defendant called to see him professionally as a physician, in the city of Mexico, Mexico, and attended him in a very serious ailment and at the special instance and request of A. J. Rogers and those having the care of him, for he continued to suffer from a very serious ailment, said Dr. A. W. Parsons accompanied him on his return trip from the city of Mexico, Mexico, to the city

of Dallas, Texas, giving diligent attention to him as a very sick patient before leaving the city of Mexico, en route to Dallas, Texas, and after arriving at the latter place, on or about the 11th of April, 1905, and that his services as physician to the said A. J. Rogers, defendant, were reasonably worth the sum of $3,000, and on said last mentioned date said defendant paid thereon the sum of five hundred dollars to the said A. W. Parsons, leaving a balance of $2,500, due and unpaid; whereby said defendant became liable and promised to pay Dr. A. W. Parsons said sum of $2,500, to become due in five payments of $500 each, due May 15, 1905; June 15, 1905; July 15th, 1905, August 15th, 1905, and September 15th, 1905, respectively, all now past due, and defendant, though often requested, has failed and refused and still fails and refuses to pay the same or any part thereof. That said debt of $2,500 is the same for which the five notes described in paragraphs two and three hereof were given. That on or about the 15th day of April, said Dr. A. W. Parsons for a valuable consideration to him paid, sold, assigned, transferred said claim or medical bill to plaintiff, and it has been since and is now the owner and holder of the same, and acquired it without any knowledge that there was any defense against the payment of the same, or that any objection would be made to paying the same; whereby plaintiff is an innocent purchaser for value, and whereby said defendant A. J. Rogers has become liable and promised to pay plaintiff said sum of twenty-five hundred dollars, with interest at six percent per annum from the maturity thereof, yet though often requested has failed and refused and still fails and refuses to pay the same or any part thereof to plaintiff's damage three thousand dollars."

The defendant Rogers interposed a general denial, and a plea of *non est factum.* The defendant McIlhenny pleaded a general denial.

After hearing all of the testimony the trial court instructed the jury to find for the defendant McIlhenny, and also instructed them that the defendant Rogers was not liable upon the notes, and submitted the case as between the plaintiff and the defendant Rogers upon the third count in the petition. The jury returned a verdict for the plaintiff against the defendant Rogers for $750, and judgment was rendered accordingly. The defendant Rogers has appealed.

The first, second, third, fourth, fifth and sixth assignments of error complain of the action of the court in permitting the plaintiff to introduce testimony tending to show the value of medical services rendered by Dr. Parsons to the defendant Rogers, and in submitting that question to the jury. These assignments are predicated upon the proposition that the third count in the plaintiff's petition was upon a stated account for an agreed sum, and not a suit upon a *quantum meruit.* We are unable to sanction that proposition. The plea referred to alleges that the services were rendered for and at the instance and request of Rogers, and that they were reasonably worth the sum of $3,000; that Rogers had paid Dr. Parsons $500, leaving a balance of $2,500 due and unpaid. It is true, that those averments are followed up with the further averment, "whereby said defendant became liable and promised to pay Dr. A. W. Parsons said sum of

$2,500, to become due in five payments of $500 each," etc., but the liability there alleged is not stated to have resulted from an express agreement between the parties, but such liability and promise to pay is alleged as a result of the facts already pleaded, and those facts disclose a liability for $2,500, resting upon an implied promise to pay for the reasonable value of the services rendered.

The other assignments are addressed to the action of the court in overruling objections interposed to the testimony of Dr. Roque Macouzet and Dr. Sidney Ulfelder, both of whom, upon hypothetical questions, stated that, in their opinion, the services of Dr. Parsons were worth at least $3,000. The hypothetical question was framed as follows:

"State what would be a reasonable charge for the following services, to wit: Dr. A. W. Parsons, a physician of the City of Mexico, Mexico, was called to see A. J. Rogers, Friday, April 7, 1905, at the Sanz Hotel, City of Mexico, and found him lying upon the floor of his room in an unconscious condition, his head in his wife's lap. He had congestion of the brain and remained unconscious for several days. He remained in the City of Mexico nearly twenty-four hours after Dr. A. W. Parsons first called to see him, and was constantly under the treatment of Dr. Parsons, who gave him stimulants and nourishment artificially, and used the ordinary means proper in similar cases. Rogers made no reply to questions, the pupils of his eyes did not respond to light, and his heart's action was very weak. This condition was augmented by the fact that he had then an organic heart lesion, which was in turn accentuated by the high altitude of the City of Mexico, and the fact that he was recently married. Dr. Parsons considered it absolutely essential A. J. Rogers should be taken away from the City of Mexico, and that it was absolutely essential that he be accompanied by a physician, and in less than twenty-four hours after Dr. Parsons was called, and on the first train leaving for the United States, A. J. Rogers left the City of Mexico for his home at Dallas, Texas, accompanied by his wife and Dr. A. W. Parsons. It was imperative that Rogers be removed as soon as possible, or otherwise he would hardly live to get home, and this was the only hope for recovery. He was absolutely unconscious on the trip until he arrived at Santillo, Mexico, where he began to talk in a disconnected and wholly irrational manner, and he improved little until he arrived home, when he recognized his wife, but did not seem to know that they were married. During the trip Dr. Parsons drew the urine of Rogers from time to time, and kept his heart action intelligently and frequently stimulated, and after arriving in Dallas, Texas, Dr. Parsons remained with Rogers one day and saw him several times during the day, and Rogers gradually improved, and Dr. Parsons made arrangements with a competent physician of Dallas, Texas, who had been known to Dr. Parsons for more than twenty years, to attend to Rogers, took the physician to the home of Rogers, and introduced him to the patient and explained the latter's condition, consulting with said physician as to what measures should be used and arrived at a definite conclusion with said physician as to the treatment required for Rogers. Dr. Parsons was engaged in all about six days or more as a physician in services attending Rogers and in going to Dallas, Texas, and re-

turning to his home, and, after the first day, was entirely away from his home and office in the City of Mexico."

The bills of exception state that the question and answers were objected to "for the reason that many of the facts therein assumed were not supported by the evidence, and that the evidence did not tend to support the same," and for other reasons that are not urged now. It will be noted that the objection was in general terms, and did not point out the particular facts claimed to have been assumed in the hypothetical question, and it may be that, for that reason, it was not error to overrule it. In this court the appellant has undertaken to point out the particular facts assumed in the hypothetical question and not proved by the testimony. These are (1) that Mr. Rogers had congestion of the brain and remained unconscious for several days; (2) that Dr. Parsons before leaving Mexico gave him nourishment artificially; (3) that his condition was augmented by the fact that he had an organic heart lesion, which was in turn accentuated by the fact that he was recently married; (4) that after he arrived at home he recognized his wife, but did not seem to know they were married; (5) that after reaching Dallas Dr. Parsons remained with Mr. Rogers one day and saw him several times during that day. The testimony given to Dr. Parsons tended to show that he was called in at night to see Mr. Rogers at his hotel in the City of Mexico, that he found him undressed on the floor of his room, his head in his wife's lap in an unconscious condition, his skin quite dark and breathing very laborious. Dr. Parsons testified that Mr. Rogers had symptoms of apoplexy or heart failure, and symptoms of congestion of the brain; that he administered appropriate remedies and remained with him all night; that his consciousness had partially returned the next morning, but that he feared that if he was not removed to a lower altitude he would not survive many hours, and so notified his wife, and told her that it would be absolutely necessary for a physician to accompany him, as he had paralysis of the bladder and his heart action was very irregular, and required intelligent stimulation and watching; that he was called to see the patient at about ten o'clock on the night of April 7, 1905, and that Rogers left the City of Mexico for Dallas, Texas, on the evening of April 8, 1905, accompanied by his wife and Dr. Parsons, the latter going at the instance of Mrs. Rogers, who was acting for and on behalf of her husband; that the patient's condition during the trip was grave until a lower altitude was reached, when he rapidly improved; that his bladder remained paralyzed and it was necessary to empty it from time to time and give him proper nourishment, such as milk, brandy and beef tea; that the witness rendered all of these necessary services; that while his heart action improved his mental condition remained about the same; that they arrived in Dallas on the morning of April 11, and arranged to leave Rogers in the hands of Dr. Hall, a competent physician, selected by Dr. Parsons to take charge of the patient; that the witness saw Rogers twice during that day in consultation with Dr. Hall; that he had greatly improved in so far as his heart and general condition were concerned, but his mental condition was still unsatisfactory; that during the journey from the City of Mexico to Dallas the witness kept a watchful eye on Rogers, injected heart

stimulants in his arm from time to time as needed, evacuated his bladder with a catheter frequently, and prepared and administered nourishment from time to time, and gave such other attention as appeared necessary. It was also shown that Mr. and Mrs. Rogers had recently married, and at the time in question were on their bridal tour.

Conceding that the hypothetical question was not entirely accurate in the particulars pointed out in appellant's brief, we are of opinion that it sufficiently stated the leading facts necessary to be considered by the witnesses, in order to form an opinion as to what would constitute a reasonable charge for the services rendered. If the question had been stated in conformity with appellant's contention, it is not believed that the opinion of the witnesses as to the value of the services rendered would have been different. The plaintiff had the right to show by expert witnesses what would be a reasonable charge for a competent physician called to see a patient at the time and place under consideration, and finding him suffering with a serious ailment, which necessitated his removal and the physician's attendance upon him during the time of such removal. The question submitted covered such a case; and while, in minor particulars, it may not have been in strict accord with the facts, we think the objections to it were properly overruled.

We also hold that the objection to the testimony of Dr. Parsons was properly overruled. Before testifying that his services to Mr. Rogers were worth $3,000, he qualified as an expert. The verdict is amply supported by testimony.

No error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.